IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| ALLYSON JEMISON, *et al.*, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| vs. | ) | CIVIL ACTION NO. 1:24-cv-22-TFM-B |
| | ) | |
| ANGEL PENA, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

**<u>MEMORANDUM OPINION AND ORDER</u>**

Pending before the Court is *Defendants Angel Pena and City of Foley's Motion to Dismiss and Incorporated Memorandum of Law* (Doc. 5, filed February 23, 2024).  Plaintiffs timely filed their response in opposition (Doc. 9, filed March 15, 2024) and Defendants timely replied (Doc. 10, filed March 22, 2024).  Having considered the motion, response, reply, and relevant law, the Court finds the motion to dismiss is due to be **GRANTED** as to Plaintiff Jeffrey Jemison's claims only.

## I.      JURISDICTION AND VENUE

The Court has subject matter jurisdiction over the claims in this action pursuant to 28 U.S.C. § 1331 (federal question).

The parties do not contest personal jurisdiction or venue, and there are adequate allegations to support both.  The district court has personal jurisdiction over the claims in this action because the events that gave rise to this action are alleged to have occurred within this judicial district.  *See Consol. Dev. Corp. v. Sherritt, Inc.*, 216 F.3d 1286, 1291-92 (11th Cir. 2000) ("Specific jurisdiction arises out of a party's activities in the forum that are related to the cause of action alleged in the complaint. . . . General personal jurisdiction, on the other hand, arises from a

defendant's contacts with the forum that are unrelated to the cause of action being litigated. The due process requirements for general personal jurisdiction are more stringent than for specific personal jurisdiction, and require a showing of continuous and systematic general business contacts between the defendant and the forum state.").

Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions that gave rise to this litigation occurred in this judicial district.

## II.    BACKGROUND

### A.    Factual Background[1]

On April 9, 2021, Defendant Angel Pena ("Pena") – an officer with the Foley Police Department – arrested Plaintiff Jeffery Jemison for drug possession and possession of drug paraphernalia – both violations of Alabama state law. Doc. 1 at 3. Plaintiff Jeffery Jemison confessed to his crimes at the scene of the arrest and later pled guilty to unlawful possession of a controlled substance. *Id.* $4,200.00 in U.S. currency was seized from Plaintiff Jeffery Jemison incident to his arrest. *Id.* The remaining plaintiffs[2] -- Allyson Jemison, Mary Jemison, and Rachel Roberson – were not present when the currency was seized. *Id.* Plaintiffs allege this seizure was intentional, willful, and without authority, justification or probable cause. *Id.*

On April 28, 2021, the State of Alabama initiated civil forfeiture proceedings for the seized currency in the Baldwin County Circuit Court. *See State v. Jemison*, Civ. Act. No. 05-CV-2021-900456.00 (Cir. Ct. Baldwin Cnty., Ala.). The proceedings were contested and ultimately resolved

---

[1] The facts presented in the "Factual Background" section of this Memorandum Opinion and Order are based on the factual allegations that are contained in the complaint (Doc. 1), which the Court must assume are true for a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6). *See, e.g., United States v. Gaubert*, 499 U.S. 315, 327 (1991).

[2] The Court shall refer to all Plaintiffs (Allyson Jemison, Jeffery Jemison, Mary Jemison, and Rachel Roberson) collectively as "Plaintiffs."

in Plaintiff Jeffery Jemison's favor.  As a result, the City of Foley ("the City") returned the currency to him.  *Id.*

## B.    Procedural Background

On January 25, 2024, Plaintiffs filed their complaint in this Court asserting two counts pursuant to 42 U.S.C. § 1983.  Plaintiffs assert Count One against Pena alleging violations of their rights under the Fourth and Fourteenth Amendments of the United States Constitution to be free of unreasonable searches and seizures.  Doc. 1 at 4-5.  The claim against Pena is as follows:

> 17.    Defendants have deprived Plaintiffs of their civil, constitutional, and statutory rights under color of law and have conspired to deprive them of such rights and are liable to Plaintiffs under 42 USC § 1983.
>
> 18.    Defendant['s] conduct deprived the Plaintiffs of their right to be free of unreasonable searches and seizures, pursuant to the Fourth and Fourteenth Amendments to the United States Constitution.
>
> 19.    Defendant['s] conduct likewise deprived the Plaintiffs of their security in their own possessions which lies at the core of the Fourth Amendment, and subsequently Defendant['s] conduct constitutes a violation of the Plaintiffs' reasonable expectation of privacy.
>
> 20.    Defendant['s] conduct also deprived Plaintiffs of their right to due process of law pursuant to the Fourteenth Amendment of the United States Constitution.
>
> 21.    Plaintiffs have been damaged as a result of the Defendants' wrongful acts.

Doc. 1 at 4.  In sum, the claim against Pena alleges an unreasonable search and seizure and a violation of procedural due process.  *See* U.S. CONST. AMEND. IV ("The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized."); *Cotton v. Jackson*, 216 F.3d 1328, 1331 (11th Cir. 2000) ("It is the state's failure to provide adequate procedures to remedy the otherwise procedurally flawed deprivation of a

protected interest that gives rise to a federal procedural due process claim." (citations omitted)).

Count Two is asserted against the City alleging it has a policy or custom under which unconstitutional practices occurred and allowed them to continue. Specifically, there was no compliance with Ala. Code. § 15-5-61.[3]  Doc. 1 at 5-6. The claim against the City is as follows:

> 23.    The City of Foley has created a policy or custom under which unconstitutional practices occurred and allowed such policies or customs to continue.  Specifically, there was no compliance with Alabama Code Section 15-5-61's requirements that there be a connection between the currency that Pena took and a criminal enterprise.
>
> 24.    The supervisors and management of Defendant Foley knew there was no connection between the currency taken and a criminal enterprise yet reviewed the reports of Pena and supervised his behavior with approval which both ratified and condoned his conduct.
>
> 25.    There was never a report, document, affidavit, deposition or statement that supported any notion that the currency was the fruit of a criminal enterprise.  The only existing documents support the opposite conclusion.
>
> 26.    Additionally, the [C]ity of Foley was grossly negligent in managing subordinates who cause the unlawful condition or event.
>
> 27.    The City of Foley is liable for the damages suffered by Plaintiffs as a result of the conduct of their employees, agents, and servants, in that, after learning of the employee's violations of the Plaintiffs' constitutional rights, they failed to remedy the wrong.
>
> 28.    The above described behavior and conduct by Defendant Foley in whole and/or in part shows a deliberate indifference on the part of Defendant Foley to the Plaintiffs['] constitutional rights and of those that may come into contact with the [C]ity of Foley.

*Id*.  The claim against the City is referred to as a *Monell* claim, which is so named because of the

---

[3] Ala. Code § 15-5-61 reads in relevant part:

> (a) Any property, proceeds, or instrumentality of every kind, used or intended for use in the course of, derived from, or realized through the commission of a felony offense, as defined in this article, or a misdemeanor offense under Article 3, Chapter 12, Title 13A, relating to prostitution offenses, or as inducement or attempt or conspiracy to commit such offenses, is subject to civil forfeiture.

Supreme Court case of the same name that extended 42 U.S.C. § 1983 liability against municipalities for a custom or policy of the municipality that is shown to be the moving force behind a plaintiff's constitutional deprivation. *Monell v. Dep't of Soc. Servs. of N.Y.*, 436 U.S. 658, 690-94 (1978).

On February 23, 2024, Defendants Pena and the City (collectively, "Defendants") filed the instant motion to dismiss. Doc. 5. Plaintiffs filed their response in opposition, and Defendants timely replied. Docs. 9, 10. The Court finds oral argument unnecessary to resolve the issues raised in the motion to dismiss. Therefore, the motion is ripe for adjudication.

## III.    STANDARD OF REVIEW

Pursuant to Fed. R. Civ. P. 12(b)(6), a defendant may move to dismiss a complaint on the basis that the plaintiff has failed to state a claim upon which relief may be granted. *See* FED. R. CIV. P. 12(b)(6). To survive a motion to dismiss, a plaintiff must plead "only enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' [*Twombly*, 550 U.S.] at 570, 127 S. Ct. [at] 1955. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Id.* at 556, 127 S. Ct. [at] 1955."). Since a Fed. R. Civ. P. 12(b)(6) motion questions the legal sufficiency of a complaint, in assessing the merits of the motion, the court must assume that all the factual allegations set forth in the complaint are true. *See, e.g., Gaubert*, 499 U.S. at 327; *Powell v. Lennon*, 914 F.2d 1459, 1463 (11th Cir. 1990); *but see also Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555) ("[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions.

Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.").  Moreover, all factual allegations shall be construed in the light most favorable to the plaintiff.  *See, e.g., Brower v. County of Inyo*, 489 U.S. 593, 598 (1989).  Obviously, therefore, a district court may not resolve factual disputes when adjudicating a motion to dismiss. *Page v. Postmaster Gen. and Chief Exec. Officer of the U.S. Postal Serv.,* 493 F. App'x 994, 995 (11th Cir. 2012)[4] (citing, among other cases, *Lawrence,* 919 F.2d at 1529, for the proposition that, under Fed. R. Civ. P. 12(b)(6), the existence of disputed material facts precludes a district court from granting a motion to dismiss).  "'When considering a motion to dismiss . . . the court limits its consideration to the pleadings and all exhibits attached thereto.'"  *Thaeter v. Palm Beach Cnty. Sheriff's Office,* 449 F.3d 1342, 1352 (11th Cir. 2006) (quoting *Grossman v. Nationsbank, N.A.,* 225 F.3d 1228, 1231 (11th Cir. 2000)); *see also Reese v. Ellis, Painter, Ratterree & Adams, LLP,* 678 F.3d 1211, 1215-16 (11th Cir. 2012) ("Because the Ellis law firm's dunning letter and enclosed documents were attached to the Reeses' complaint as an exhibit, we treat them as part of the complaint for [Fed. R. Civ. P.] 12(b)(6) purposes.").

## IV.    DISCUSSION AND ANALYSIS

As an initial matter, Defendants request the Court to consider documents it attached to its instant motion to dismiss, pursuant to the doctrine of incorporation by reference.  Doc. 5 at 1 n.1. The documents include three (3) warrants for the arrest of Plaintiff Jeffery Jemison, each of which are dated April 9, 2021, and a civil forfeiture complaint that was filed in the Circuit Court of Baldwin County, Alabama, by the State of Alabama against Plaintiff Jeffery Jemison and

---

[4] In this Circuit, "[u]npublished opinions are not considered binding precedent, but they may be cited as persuasive authority."  11th Cir. R. 36-2 (effective Dec. 1, 2014); *see also Henry v. Comm'r of Soc. Sec.*, 802 F.3d 1264, 1267 n.1 (11th Cir. 2015) ("Cases printed in the Federal Appendix are cited as persuasive authority.").

$4,200.00 in United States currency.  Docs. 5-1, 5-2.

"Under the doctrine of incorporation by reference, [a district court] may also consider documents attached to the motion to dismiss if they are referred to in the complaint, central to the plaintiff's claim, and of undisputed authenticity."  *Hi-Tech Pharm., Inc. v. HBS Int'l Corp.*, 910 F.3d 1186, 1189 (11th Cir. 2018) (citations omitted); *see also Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322-23 (2007) ("Courts must consider the complaint in its entirety, as well as other sources courts ordinarily examine when ruling on Rule 12(b)(6) motions to dismiss, in particular, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice.").

In Plaintiffs' complaint, they reference Plaintiff Jeffery Jemison's April 9, 2021 arrest for various offenses as well as the forfeiture action that was filed against the seized currency.  While the warrants for Plaintiff Jeffery Jemison's arrest are directly related to Plaintiffs' alleged facts, they are not referenced in the complaint.  However, the forfeiture complaint is referenced in the complaint, central to Plaintiffs' claims, and of undisputed authenticity.  Therefore, the Court will consider the forfeiture complaint that Defendants attached to the motion to dismiss.[5]

As to Defendants' arguments to support the motion to dismiss, they are as follows: (1) Plaintiffs' claims against them are barred by the applicable statute of limitations, (2) Defendant Angel Pena is entitled to qualified immunity, and (3) Plaintiffs fail to allege a viable 42 U.S.C. § 1983 claim against the City.  Doc. 5.  The Court will address each argument in turn, but first the Court must address a jurisdictional matter.

**A.    Standing – Allyson Jemison, Mary Jemison and Rachel Roberson**

---

[5] "[A] court may take notice of another court's order only for the limited purpose of recognizing the 'judicial act' that the order represents or the subject matter of the litigation."  *United States v. Jones*, 29 F.3d 1549, 1553 (11th Cir. 1994) (citations omitted).

It is not clear to the Court from the complaint who Allyson Jemison, Mary Jemison, and Rachel Roberson are or what interests they have in this matter, which implicates their standing to prosecute this matter. To establish Article III standing, a plaintiff must show: (1) injury in fact; (2) causation; and (3) redressability. *Sierra v. City of Hallandale Beach*, 996 F.3d 1110, 1112 (11th Cir. 2021) (citing *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560-61 (1992)); *Tokyo Gwinnett, LLC v. Gwinnett County*, 940 F.3d 1254, 1262 (11th Cir. 2019) (citation omitted). Put in more detail, the Supreme Court states, to invoke federal jurisdiction, a plaintiff bears the burden of establishing the "irreducible constitutional minimum" of standing by demonstrating the plaintiff has (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) likely to be redressed by a favorable judicial decision. *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016) (citations omitted). All three prongs must be met and the failure to prove any of them results in a lack of standing.

In the case at hand, beyond Jeffrey Jemison, the complaint fails to establish the standing of the remaining three plaintiffs. "In reviewing the standing question, the court must be careful not to decide the questions on the merits for or against the plaintiff, and must therefore assume that on the merits the plaintiffs would be successful in their claims." *Culverhouse v. Paulson & Co.*, 813 F.3d 991, 994 (11th Cir. 2016) (citations omitted).

While the allegations arguably touch upon the second two elements (causation and redressability), the Complaint wholly fails to establish the first element – injury in fact. To meet the requirement of an injury in fact, Plaintiffs "must show that [they] suffered an invasion of a legally protected interest that is concrete and particularized and actual or imminent, not conjectural or hypothetical." *Spokeo*, 578 U.S. at 339 (quotations and citation omitted). Particularized means that it "affected the plaintiff[s] in a personal and individual way." *Id*. For an injury to be concrete,

"it must be de facto; that is, it must actually exist." *Id*. at 340. The complaint fails to identify who Allyson Jemison, Mary Jemison, and Rachel Roberson are in relation to the currency and how the seizure affected them. In fact, even when reviewing the civil forfeiture action, it does not establish who these plaintiffs are in relation to Jeffrey Jemison who was the one who had the currency that was seized during the traffic stop. Beyond a brief reference to "their money" in paragraph 10 of the factual allegations, there is no reference as to how the remaining plaintiffs have an interest in the currency and therefore were affected by its seizure and the subsequent forfeiture proceedings against it. It is clear from the complaint how Jeffrey Jemison has an interest in the currency, but there is no discussion of how the remaining plaintiffs have an interest in the seized currency.

Therefore, the Court must dismiss without prejudice the claims that are brought by Allyson Jemison, Mary Jemison, and Rachel Roberson for lack of standing, which is a jurisdictional determination. That leaves only the claims brought by Plaintiff Jeffrey Jemison.

**B.      Statute of Limitations**

The Fourth Amendment is "applied to the states by way of the Fourteenth Amendment" and "protects '[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures.'" *Gennusa v. Canova*, 748 F.3d 1103, 1109-10 (11th Cir. 2014) (quoting U.S. CONST. AMEND. IV). The applicable statute of limitations for 42 U.S.C. § 1983 claims is the forum state's general or residual statute of limitations for personal injury actions. *Owens v. Okure*, 488 U.S. 235, 249-50 (1989); *Lufkin v. McCallum*, 956 F.2d 1104, 1105 (11th Cir. 1992). In Alabama, the statute of limitations for a personal injury action is two (2) years. *McNair v. Allen*, 515 F.3d 1168, 1173 (11th Cir. 2008); ALA. CODE 6-2-38(l). Although Alabama has "more than one statute of limitations for personal injury actions, the residual personal injury statute of limitations applies to all actions brought under § 1983." *Jones v. Preuit & Mauldin*, 876

F.2d 1480, 1482 (11th Cir. 1989).   While state law determines the length of the statute of limitations period, federal law governs when a cause of action accrues.  *Wallace v. Kato*, 549 U.S. 384, 388 (2007).

> In Section 1983 cases, "'the statute [of limitations] does not begin to run until the facts which would support a cause of action are apparent or should be apparent to a person with a reasonably prudent regard for his rights.'"  *Calhoun v. Ala. Alcoholic Beverage Control Bd.*, 705 F.2d 422, 425 (11th Cir. 1983) (quoting *Reeb. v. Econ. Opportunity Atlanta, Inc.*, 516 F.2d 924, 930 (5th Cir. 1975)).   Thus Section 1983 actions do not accrue until the plaintiff knows or has reason to know that he has been injured.  *Calhoun*, 705 F.2d at 424; *Rubin*, 621 F.2d at 116; *Lavellee*, 611 F.2d at 1131.   Nor will a Section 1983 action accrue until the plaintiff is aware or should have been aware who has inflicted the injury.  *Lavellee*, 611 F.2d at 1131 (quoting *United States v. Kubrick*, 444 U.S. 111, 100 S. Ct. 352, 62 L. Ed. 2d 259 (1979)).

*Mullinax v. McElhenney*, 817 F.2d 711, 716 (11th Cir. 1987); *see also McNair v. Allen*, 515 F.3d 1168, 1173 (11th Cir. 2008) (explaining *Mullinax* "has long been the law of this Circuit" for § 1983 actions).

Defendants argue the statute of limitations began to run on April 9, 2021, when Plaintiffs allege the currency was unlawfully seized from Jeffrey Jemison during his arrest, and the instant action was filed on January 25, 2024, more than two (2) years afterward.  Doc. 5 at 5-6.   In response, Plaintiffs argue the applicable two (2) year statute of limitations did not begin to toll until the civil forfeiture action that was brought against Plaintiff Jeffery Jemison and the seized currency was resolved.  Doc. 9 at 4-5.   Plaintiffs cite to *Bloom v. Alvereze*, 498 F. App'x 867 (11th Cir. 2012), to support their argument.  Doc. 9 at 4-5.   However, the section of the *Bloom* decision to which Plaintiffs cite analyzes when the statute of limitations period begins to toll for a malicious prosecution claim, one element of which is the "termination of the original proceeding in the plaintiff's favor," and does not apply to either their unreasonable search and seizure, procedural due process, or *Monell* claim.  498 F. App'x at 875 (citing *Kingsland v. City of Miami*, 382 F.3d

Page 10 of 23

1220, 1234 (11th Cir. 2004)).

When addressing a § 1983 claim alleging an unlawful seizure under the Fourth Amendment, courts have determined the statute of limitations begins to run at the time the plaintiff learns of the seizure.  *See Rice v. Sixteen Unknown Fed. Agents*, 658 F. App'x 959, 962 (11th Cir. 2016)); *Holt v. Valls*, 395 F. App'x 604, 606 (11th Cir. 2010); *see also Lyons v. Maddox*, Civ. Act. No. 1:19-cv-276-ECM-SMD, 2021 U.S. Dist. LEXIS 65687, at *5, 2021 WL 5278739, at * 3 (M.D. Ala. Apr. 2, 2021) (footnote omitted) (citing *Holt* and *Rice* and their holdings about the accrual of the statute of limitations); *Perez-Hernandez v. Screws*, Civ. Act. No. 13-0506-WS-N, 2014 U.S. Dist. LEXIS 37750, at *17-19, 2014 WL 1152859, at *6 (S.D. Ala. March 21, 2014) (citing cases in which the statute of limitations was determined to have begun to toll when the property was seized for purposes of a *Bivens v. Six Unknown Named Agents of the Fed. Bureau of Narcotics*, 403 U.S. 388 (1971), action)[6].

*Bloom* is also clear that the statute of limitations on an unlawful seizure begins to run when the plaintiff's property was seized at the time of his arrest and was not a continuing violation.  498 F. App'x at 874-75.  "Additionally, a claim based on continued retention accrues once the state provides or refuses to provide a post-deprivation remedy, i.e., forfeiture proceedings are instigated."  *Bloom*, 498 F. App'x at 875 (citing *Lindsey v. Storey*, 936 F.2d 554, 561 (11th Cir. 1991)).  The forfeiture proceedings began on April 28, 2021.

The statute of limitations for Plaintiffs' *Monell* claim is tethered to their original alleged constitutional violations.  *See Mullinax v. McElhenney*, 817 F.2d 711, 716 (11th Cir. 1987)

---

[6] "[A] *Bivens* suit challenges the constitutionality of the actions of federal officials . . . [and] create[s] a remedy against federal officers, acting under color of federal law, that [is] analogous to the section 1983 action against state officials."  *Abella v. Rubino*, 63 F.3d 1063, 1065 (11th Cir. 1995) (citation and internal quotation marks omitted).

("Section 1983 actions do not accrue until the plaintiff knows or has reason to know that he has been injured." *Calhoun*, 705 F.2d at 424).

Based on Plaintiffs' allegations, Jeffrey Jemison knew or had reason to know he was deprived of the subject currency when it was seized, incident to his arrest on April 9, 2021. Doc. 1 at 3-4. Based on the copy of the forfeiture complaint filed by the State against the seized currency, the action was initiated on April 28, 2021. Doc. 5-2. Even assuming, without deciding, that the Court must go with the later of the two – the initiation of forfeiture proceedings, two (2) years from the date was April 29, 2023,[7] and the instant action was not filed until January 25, 2024, almost nine (9) months after the statute of limitations period ended under either seizure or continuing retention allegations. Therefore, Jeffery Jemison's claims that are brought pursuant to 42 U.S.C. § 1983 against Defendants are barred by the applicable statute of limitations and Defendants' motion to dismiss as to those claims is granted.

## C.    Qualified Immunity - Pena

Defendants argue Pena is entitled to qualified immunity as to Plaintiffs' claims that he violated their Fourth and Fourteenth Amendment rights, pursuant to 42 U.S.C. § 1983, because his alleged acts were performed within the scope of his discretionary authority at all relevant times. Doc. 5 at 7-9. Defendants argue Pena was legally justified when he searched Jeffrey Jemison's vehicle, since Mr. Jemison "confessed at the scene," as he alleges in his complaint, and a search of the vehicle yielded drugs, currency, and baggies, the discovery of which provided Pena arguable probable cause to seize the currency as fruits of a criminal enterprise. *Id.* Defendants also argue Pena cannot be liable to Plaintiffs for the forfeiture of the currency since he was not the authority

---

[7] For a federal period of limitations, "exclude the day of the event that triggers the period." FED. R. CIV. P. 6(a)(1)(A).

that initiated the civil forfeiture proceeding against Jeffrey Jemison and the seized currency, which, in Alabama, the proper authority is its district attorneys. *Id.* (citing ALA. CODE § 12-17-184). Finally, Defendants argue Pena did not violate clearly established federal law since, when the currency was seized, he possessed at least arguable probable cause to search for, and seize, the currency from Jeffrey Jemison. *Id.*

In response, Plaintiffs[8] argue the cases upon which Defendants rely in their motion to dismiss were decided on motions for summary judgment. Doc. 9 at 5-8. Plaintiffs also argue they clearly allege Pena seized the currency without probable cause and there was no connection between the currency and a criminal enterprise. *Id.*

"The doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). To be protected by qualified immunity, the government official must first demonstrate that he was acting within the scope of his discretionary authority when the alleged wrongful acts occurred. *Garcia v. Casey*, 75 F.4th 1176, 1185 (11th Cir. 2023) (citing *Melton v. Abston*, 841 F.3d 1207, 1221 (11th Cir. 2016)); *Harbert Int'l, Inc. v. James*, 157 F.3d 1271, 1281 (11th Cir. 1998). "Once it has been determined that an official was acting within the scope of his discretionary authority, the burden shifts to the plaintiff to establish that qualified immunity is inappropriate." *Garcia*, 75 F.4th at 1185 (quotation omitted).

---

[8] The Court notes that it has already dismissed the claims brought by Allyson Jemison, Mary Jemison, and Rachel Roberson for lack of standing. However, as the Plaintiffs lump all their claims and arguments together, for purposes of recitation of the arguments, the Court refers to Plaintiffs. However, this section still only applies to Jeffrey Jemison as the Court cannot make merits-based determinations as to the remaining plaintiffs.

Courts utilize a two-part framework to evaluate qualified immunity claims. *Castle v. Appalachian Tech. College*, 631 F.3d 1194, 1197 (11th Cir. 2011). The first element is whether the plaintiff's allegations, if true, establish a constitutional violation. *Pearson*, 555 U.S. at 232 (citing *Saucier v. Katz*, 533 U.S. 194, 201 (2001)). The second element is whether the constitutional right at issue was "clearly established" at the time of the defendant's alleged misconduct. *Id*. at 232. "Clearly established means that, at the time of the officer's conduct, the law was sufficiently clear that every reasonable official would understand that what he is doing is unlawful." *Garcia*, 75 F.4th at 1185 (quoting *District of Columbia v. Wesby*, 583 U.S. 48, 63 (2018)). "In other words, existing law must have placed the constitutionality of the officer's conduct 'beyond debate.'" *Wesby*, 583 U.S. at 63 (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 735, (2011)). This demanding standard protects "all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U. S. 335, 341 (1986). As to the second prong of the analysis, courts "recognize three sources of law that would put a government official on notice of statutory or constitutional rights: specific statutory or constitutional provisions; principles of law enunciated in relevant decisions; and factually similar cases already decided by state and federal courts in the relevant jurisdiction." *Goebert v. Lee Cnty.*, 510 F.3d 1312, 1330 (11th Cir. 2007). Courts will also look beyond caselaw to whether the case at hand is one of "obvious clarity" – i.e., where the officer's conduct "lies so obviously at the very core of what the Fourth Amendment prohibits that the unlawfulness of the conduct was readily apparent to [the official], notwithstanding the lack of fact-specific case law" on point. *Oliver v. Fiorino*, 586 F.3d 898, 907 (11th Cir. 2009) (quoting *Vinyard v. Wilson*, 311 F.3d 1340, 1355 (11th Cir. 2002)). In such situations where it is so obvious, courts have repeatedly held that the constitutional violation is clearly established even though there is no decision in a "materially similar preexisting case."

*Cantu*, 974 F.3d at 1235 (citations and internal quotations omitted).   That said, "the clearly established law standard is a demanding one."   *Id.* (citing *Wesby*, 583 U.S. at 63; *City & Cty. of San Francisco. v. Sheehan*, 575 U.S. 600 (2015)).

   The first inquiry may be a mixed question of law or fact, but the second inquiry is purely a question of law.   *Hall v. Flournoy*, 975 F.3d 1269, 1275 (11th Cir. 2020).   "Both elements of this test must be present for an official to lose qualified immunity, and this two-pronged analysis may be done in whatever order is deemed most appropriate for the case."   *Brown v. City of Huntsville*, 608 F.3d 724, 734 (11th Cir. 2010) (citing *Pearson*).   If a plaintiff fails to establish either one, then the defendant is entitled to qualified immunity.

   As to whether Pena acted within his discretionary authority, Plaintiffs argue he did not because he seized the currency "without probable cause and no constitutional authority."   Doc. 9 at 6.   Plaintiffs allege Pena "act[ed] under state law," but they also allege Pena acted "without authority, justification or probable cause."   Doc. 1 at 3.

   An officer acts within his discretionary authority when his behavior is "(1) undertaken pursuant to the performance of his duties, and (2) within the scope of his authority."   *Est. of Cummings v. Davenport*, 906 F.3d 934, 940 (11th Cir. 2018) (quoting *Harbert Int'l, Inc. v. James*, 157 F.3d 1271, 1282 (11th Cir. 1998)); *Lenz v. Winburn*, 51 F.3d 1540, 1545 (11th Cir. 1995).   "Our inquiry is two-fold. We ask whether the government employee was (a) performing a legitimate job-related function (that is, pursuing a job-related goal), (b) through means that were within his power to utilize."   *Holloman ex rel. Holloman v. Harland*, 370 F.3d 1252, 1265 (11th Cir. 2004) (citation omitted).   "In applying each prong of this test, we look to the general nature of the defendant's action, temporarily putting aside the fact that it may have been committed for an unconstitutional purpose, in an unconstitutional manner, to an unconstitutional extent, or under

constitutionally inappropriate circumstances." *Mikko v. City of Atlanta*, 857 F.3d 1136, 1144 (11th Cir. 2017) (quoting *Holloman*, 370 F.3d at 1266). Therefore, an officer may still be acting within his discretionary authority even if/when violating the constitution. The relevant analysis is "whether the act complained of, if done for a proper purpose, would be within, or reasonably related to, the outer perimeter of an official's discretionary duties." *Harbert Int'l v. James*, 157 F.3d 1271, 1282 (11th Cir. 1998) (citations and internal quotations omitted).

While Plaintiffs' allegations state Pena acted without authority, it is undisputed he seized the currency while performing his duties as a law enforcement officer and incident to a traffic stop. Therefore, Pena acted within his discretionary authority.

Since the Court has determined Pena acted within his discretionary authority, it will now turn to the second stage of the analysis for qualified immunity which is to address Plaintiffs' argument that Pena seized the currency without probable cause and thereby violated Jeffrey Jemison's constitutional rights.

The complaint does not detail much of what occurred when the currency was seized other than Jeffery Jemison was arrested for drug possession and possession of drug paraphernalia, he confessed at the scene, and the currency was seized. However, the confession along with the discovery of the drugs and paraphernalia provide plenty of probable cause for the arrest and seizure of the currency.

The civil forfeiture action that was filed by the State of Alabama against Jeffery Jemison and the seized currency details the following in relevant part:

1. On April 9, 2021, officer Angel Pena with the Foley Police Department initiated a traffic stop on a 2014 Chevrolet Malibu for running a stop sign.

2. Upon approaching the vehicle, Off. Pena smelled an odor of marijuana. The officer also noticed marijuana flakes on the driver's shirt.

3.      The driver was identified as Jeffrey Allen Jemison, Sr.

4.      During a search of the vehicle, officers located approximately 8 grams of marijuana, approximately 2 grams cocaine, and plastic baggies.

5.      Officer located a large sum of currency in Jemison's pocket, and additional currency in a pill bottle.

6.      Jemison admitted to purchasing cocaine that day which he intended to resell for a profit.  Jemison also admitted to purchasing marijuana.

7.      Jemison was placed under arrest for Possession of Marijuana First Degree pursuant to Code of Alabama § 13A-12-213, Possession of a Controlled Substance pursuant to Code of Alabama § 13A-12-212, and Possession of Drug Paraphernalia pursuant to Code of Alabama § 13A-12-260.

Doc. 5-2.  The Court does note that these are merely the State's allegations.  However, the State's allegations are not contradicted by the Plaintiffs' Complaint.  Even Plaintiffs admit that Jeffrey Jemison "confessed at the scene of the arrest and pled guilty later" after his arrest for "drug possession in violation of Alabama Code Section 13A-12-212 and 13A-12-213 and possession of drug paraphernalia in violation of Alabama Code Section 13A-12-260."  Doc. 1 at 3, ¶ 11.

Here, Pena legitimately stopped Jeffrey Jemison's vehicle based on a traffic violation. "Under *Terry* [*v. Ohio*, 392 U.S. 1, 88 S. Ct. 1868, 20 L. Ed. 2d 889 (1968)], law-enforcement officers may stop a vehicle for investigatory purposes based on a traffic violation." *State v. Perry*, 66 So. 3d 291, 294 (Ala. Crim. App. 2010) (alteration in original) (citations omitted).

> Whether there is probable cause to merit a warrantless search and seizure is to be determined by the totality of the circumstances. *Illinois v. Gates*, 462 U.S. 213, 103 S. Ct. 2317, 76 L. Ed. 2d 527 (1983).  "Probable cause exists where all the facts and circumstances within the officer's knowledge are sufficient to warrant a person of reasonable caution to conclude that an offense has been or is being committed and that contraband would be found in the place to be searched." *Sheridan v. State*, 591 So. 2d 129, 130 (Ala. Crim. App. 1991).  *State v. Stallworth*, 645 So. 2d 323, 325 (Ala. Cr. App. 1994).

*Woods v. State*, 695 So. 2d 636, 640 (Ala. Crim. App. 1996).  "Sufficient

probability, not certainty . . ., is the touchstone under the Fourth Amendment." *Allen v. State*, 689 So. 2d 212, 216 (Ala. Crim. App. 1995).

> Warrantless searches are per se unreasonable, unless they fall within a recognized exception. *Ex parte Hilley*, 484 So. 2d 485 (Ala. 1985). Those exceptions include: objects in plain view, consensual searches, a search incident to a lawful arrest, hot pursuit or emergency situations, probable cause coupled with exigent circumstances, and a *Terry* 'stop and frisk' situation. *Daniels v. State*, 290 Ala. 316, 276 So. 2d 441 (1973). Where a search is executed without a warrant, the burden falls upon the State to show that the search falls within an exception. *Kinard v. State*, 335 So. 2d 924 (Ala. 1976).

*Ex parte Tucker*, 667 So. 2d 1339, 1343 (Ala. 1995).

*Perry*, 66 So. 3d at 294. "[T]he smell of burnt marijuana emanating from a vehicle is sufficient probable cause to search a vehicle." *Merricks v. Adkisson*, 785 F.3d 553, 560 n.3 (11th Cir. 2015) (citing *United States v. Tobin*, 923 F.2d 1506, 1512 (11th Cir. 1991)).

In this case, Pena had a legitimate reason to search Jeffrey Jemison's vehicle during the traffic stop since Pena smelled marijuana when he approached the vehicle. This is also bolstered by the fact Jeffrey Jemison ultimately confessed on the scene and pled guilty to the possession of drugs and paraphernalia.

Pursuant to Ala. Code § 15-5-61(a), the following is subject to seizure: "Any property, proceeds, or instrumentality of every kind, used or intended for use in the course of, derived from, or realized through the commission of a felony offense, as defined in this article." Jeffrey Jemison was arrested for, among other offenses, possession of a controlled substance, pursuant to Ala. Code § 13A-12-212, which is a Class D felony. *See* Doc. 5-2 at 2. Further, the presence of "drug paraphernalia or accouterments indicating sale, such as 'baggies' or scales" have been found to be "indicative of contemplated or completed drug transactions" under Alabama law. *Gatlin v. State*, 846 So. 2d 1090, 1093 (Ala. Civ. App. 2022) (citing *Johnson v. State*, 667 So. 2d 105, 108 (Ala.

Civ. App. 1995)).  Since Pena found drug paraphernalia and "baggies," along with a controlled substance, when he searched Jeffrey Jemison's vehicle, Pena acted lawfully when he seized the currency.  Therefore, Plaintiffs have not shown their allegations, if true, establish Pena violated their constitutional rights, and Pena is entitled to qualified immunity as to their claims against him.

Further, any claim that Pena is liable to Plaintiffs for the forfeiture of the currency is without merit.  Alabama law prescribes:

> It is the duty of every district attorney and assistant district attorney, within the circuit, county, or other territory for which he or she is elected or appointed:
>
> . . .
>
> (2) To prosecute and defend any civil action in the circuit court in the prosecution or defense of which the state is interested.

ALA. CODE § 12-17-184(3).  Pena, as merely the law enforcement officer who seized the currency, did not have the authority to bring a civil forfeiture action against the currency and interested parties.  That authority is vested in the appropriate district and assistant district attorneys of Alabama.

Accordingly, Pena is entitled to qualified immunity as to Jeffrey Jemison's claims against him for violations of their rights under the Fourth and Fourteenth Amendments that are brought pursuant to 42 U.S.C. § 1983, and Defendants' motion to dismiss as to those claims is granted and the claims are dismissed with prejudice.

**D.**     ***Monell* claim against the City**

Under 42 U.S.C. § 1983, "a municipality may be held liable for the actions of a police officer only when municipal 'official policy' causes a constitutional violation;" a municipality cannot be held liable on a theory of respondeat superior liability.  *Gold v. City of Miami*, 151 F.3d 1346, 1350 (11th Cir. 1998).  Therefore, a municipality can only be held liable under § 1983 for

constitutional injuries inflicted by its employees "when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury." *Monell*, 438 U.S. at 694. When bringing a *Monell* claim, a plaintiff may establish a municipality's policy that caused a constitutional injury by identifying either "(1) an officially promulgated county policy or (2) an unofficial custom or practice of the county shown through the repeated acts of a final policymaker for the county." *Grech v. Clayton Cnty.*, 335 F.3d 1326, 1329 (11th Cir. 2003).

Defendants argue Plaintiffs fail to allege a cognizable *Monell* claim because they do not allege a custom or policy that constitutes deliberate indifference to Plaintiffs' constitutional rights or that any such custom or policy caused the constitutional violation that they allege in their complaint. Doc. 5 at 10-12; Doc. 10 at 9-10.

In response, Plaintiffs argue they do cite to a custom or policy that would subject the City to *Monell* liability. Doc. 9 at 8. Specifically, Plaintiffs cite to paragraph 23 of the complaint, which reads:

> 23. The City of Foley has created a policy or custom under which unconstitutional practices occurred and allowed such policies or customs to continue. Specifically, there was no compliance with Alabama Code Section 15-5-61's requirements that there be a connection between the currency that Pena took and a criminal enterprise.

Doc. 1 at 5.

> Plaintiffs who seek to impose liability on local governments under § 1983 must prove that "action pursuant to official municipal policy" caused their injury. *Monell*, 436 U.S. at 691, 98 S. Ct. 2018; *see id.*, at 694, 98 S. Ct. 2018. Official municipal policy includes the decisions of a government's lawmakers, the acts of its policymaking officials, and practices so persistent and widespread as to practically have the force of law. *See ibid.*; *Pembaur* [*v. City of Cincinnati*], 475 U.S. [469,] 480-81, 106 S. Ct. 1292[, 89 L. Ed. 2d 452 (1986)]; *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 167-68, 90 S. Ct. 1598, 26 L. Ed. 2d 142 (1970). These are "action[s] for which the municipality is actually responsible." *Pembaur, supra,* at 479-80, 106 S. Ct. 1292.

In limited circumstances, a local government's decision not to train certain employees about their legal duty to avoid violating citizens' rights may rise to the level of an official government policy for purposes of § 1983. A municipality's culpability for a deprivation of rights is at its most tenuous where a claim turns on a failure to train. *See Oklahoma City v. Tuttle*, 471 U.S. 808, 822-23, 105 S. Ct. 2427, 85 L. Ed. 2d 791 (1985) (plurality opinion) ("[A] 'policy' of 'inadequate training'" is "far more nebulous, and a good deal further removed from the constitutional violation, than was the policy in *Monell*"). To satisfy the statute, a municipality's failure to train its employees in a relevant respect must amount to "deliberate indifference to the rights of persons with whom the [untrained employees] come into contact." [*City of*] *Canton* [*v. Harris*], 489 U.S. [378,] 388, 109 S. Ct. 1197[, 103 L. Ed. 2d 412 (1989)]. Only then "can such a shortcoming be properly thought of as a city 'policy or custom' that is actionable under § 1983." *Id.* at 389, 109 S. Ct. 1197.

"'[D]eliberate indifference' is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action." [*Bd. of the Cty. Comm'rs of*] *Bryan Cty.* [*v. Brown*], 520 U.S. [397,] , 117 S. Ct. 1382[, 137 L. Ed. 2d 626 (1997)]. Thus, when city policymakers are on actual or constructive notice that a particular omission in their training program causes city employees to violate citizens' constitutional rights, the city may be deemed deliberately indifferent if the policymakers chose to retain that program. *Id.* at 407, 117 S. Ct. 1382. The city's "'policy of inaction'" in light of notice that its program will cause constitutional violations "is the functional equivalent of a decision by the city itself to violate the Constitution." *Canton*, 489 U.S. at 395, 109 S. Ct. 1197 (O'Connor, J., concurring in part and dissenting in part). A less stringent standard of fault for a failure-to-train claim "would result in *de facto respondeat superior* liability on municipalities . . . ." *Id.* at 392, 109 S. Ct. 1197; *see also Pembaur, supra*, at 483, 106 S. Ct. 1292 (opinion of Brenna, J.) ("[M]unicipal liability under § 1983 attaches where-and only where-a deliberate choice to follow a course of action is made from among various alternatives by [the relevant] officials . . . .").

A pattern of similar constitutional violations by untrained employees is "ordinarily necessary" to demonstrate deliberate indifference for purposes of failure to train. *Bryan Cty.*, 520 U.S. at 409, 117 S. Ct. 1382. Policymakers' "continued adherence to an approach that they know or should know has failed to prevent tortious conduct by employees may establish the conscious disregard for the consequences of their action-the 'deliberate indifference'-necessary to trigger municipal liability." *Id.* at 407, 117 S. Ct. 1382. Without notice that a course of training is deficient in a particular respect, decisionmakers can hardly be said to have deliberately chosen a training program that will cause violations of constitutional rights.

*Connick v. Thompson*, 563 U.S. 51, 60-63 (2011).

Here, Plaintiffs have not properly alleged a custom or policy by the City that would make

it liable under *Monell*.  Plaintiffs allege the City had a custom or policy of violating Ala. Code §

15-5-61 and allowed its law enforcement officers to seize currency that did not have a nexus with

a criminal enterprise.  However, the only incident of such conduct that they allege pertains to the

seizure of currency from Jeffrey Jemison that is the basis of this action.  A single incident does not

establish a custom or policy by the City.  *Ireland v. Prummell*, 53 F.4th 1274, 1289 (11th Cir.

2022) ("Proof of a single incident of unconstitutional activity is not sufficient to impose liability

on a governmental entity as part of either a policy or custom unless the challenged policy itself is

unconstitutional." (citations and internal quotation marks omitted)); *Depew v. City of St. Marys*,

787 F.2d 1496, 1499 (11th Cir. 1986) ("Normally, random acts or isolated incidents are insufficient

to establish a custom or policy.").  In any case, the Court found the seizure of currency from Jeffrey

Jemison did not violate his constitutional rights, so the City cannot be held liable for the seizure

incident to the arrest.

The fact that the civil forfeiture proceedings ended favorably for Jeffrey Jemison are

insufficient to allege a policy or custom against the City.  Further, the initiation of civil forfeiture

proceedings does not establish an improper policy or custom against the City.  Finally, the civil

forfeiture proceedings were done by the State and not the City.  Therefore, the City cannot be held

responsible for actions taken by the State.

Therefore, Defendants' motion to dismiss Plaintiffs' *Monell* claim against the City is

granted and the claims are dismissed with prejudice.

## V.    CONCLUSION

Accordingly, it is hereby **ORDERED** as follows:

(1)    Plaintiffs Allyson Jemison, Mary Jemison, and Rachel Roberson are **DISMISSED**

**without prejudice** for lack of Article III standing.

(2)      Defendants Angel Pena and the City of Foley's Motion to Dismiss and Incorporated Memorandum of Law (Doc. 5) is **GRANTED** as to Plaintiff Jeffrey Jemison's claims against Defendants Angel Pena and City of Foley which are **DISMISSED with prejudice**.

A separate judgment will issue pursuant to Fed. R. Civ. P. 58.

**DONE** and **ORDERED** this 25th day of September 2024.

<u>/s/ Terry F. Moorer</u>
TERRY F. MOORER
UNITED STATES DISTRICT JUDGE